UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. BUREAU OF LAND MANAGEMENT,<br><br>    Defendant. | Civil Action 04-1446 (HHK) |

**MEMORANDUM OPINION**

Plaintiff, Southern Utah Wilderness Alliance ("SUWA"), has requested the Bureau of Land Management ("BLM") to disclose records relating to cultural resources located in the San Juan Resource Area, the Kanab Resource Area, and the Grand Staircase-Escalante National Monument under the Freedom of Information Act, 5 U.S.C. § 552 *et seq*. BLM has not processed this request and has denied SUWA's request for a fee waiver. By this action, SUWA and Great Old Broads for Wilderness[1] seek a determination that BLM's decision denying SUWA's request for a fee waiver was improper.

---

[1] Great Old Broads for Wilderness, "a grassroots organization dedicated to wilderness protection, particularly in the Mountain West," Compl. ¶ 4, appears as a plaintiff in this case. Because Great Old Broads for Wilderness did not participate in the underlying FOIA request, it is unclear what standing, if any, the organization has in this action. The exclusion of Great Old Broads for Wilderness, however, does not change the outcome of the case.

1

Presently before the court are the parties' cross-motions for summary judgment [#11, 15]. Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that plaintiffs' motion must be granted, while defendant's motion must be denied.

## I. BACKGROUND

On September 9, 2002, SUWA submitted a FOIA request to the BLM's field office in Monticello, Utah. Among nine other categories of records not implicated by this suit, SUWA sought "any records relating in any way to cultural resources in the San Juan Resource Area, including documents relevant to the management, condition, approximate or general location, and protection of, and impacts to these resources." Def.'s Mot. for Summ. J., Ex. A ("Request Letter") at 3. SUWA also made essentially identical requests for records pertaining to cultural resources in two other federally-managed lands in Utah, the Grand Staircase-Escalante National Monument and the Kanab Resource Area, by letters respectively dated September 10, 2002 and November 18, 2002.[2] All three locations for which SUWA sought records are in the southernmost part of Utah, "a dry area with many caves, allowing for the preservation of normally perishable cultural materials," which thus "includes an extensive record of human habitation" dating back at least 5,000 years. Smith Decl. ¶ 6.

---

[2] With respect to SUWA's Grand Staircase-Escalante request, BLM provided a response letter dated October 8, 2002, and SUWA filed its appeal on November 5, 2002. *See* Def.'s Mot. for Summ. J., Ex. B. With respect to the Kanab request, BLM sought clarification of certain items on December 19, 2002, which SUWA provided on January 21, 2003. Compl. ¶ 18. BLM then issued its response on February 20, 2003, which SUWA appealed on March 20, 2003. *See* Def.'s Mot. for Summ. J., Ex. C. Because the legal issues pertaining to all three requests are identical, for ease of reference this opinion cites to dates and other relevant details of the San Juan request alone.

SUWA's requests acknowledged that "records specifying the locations of cultural resources may not be subject to disclosure under FOIA." Request Letter at 3. In addition to seeking disclosure of responsive documents, SUWA requested that BLM waive applicable fees because SUWA "will not use these records for its commercial benefit" but seeks them instead to "to aid its members and the public in understanding the workings of its government," *id*. at 5.

BLM responded to SUWA's request on October 10, 2002. With regard to SUWA's request for documents related to cultural resources, the agency wrote that

> the majority of the documents we have are 'site forms.' All information on these forms that relates to the location or nature of the cultural resource must be redacted in accordance with exemption (b)(3) of the FOIA and Section 9 of the Archaeological Resources Protection Act (ARPA, 16 U.S.C. 470hh). With all of the location and nature information redacted, there is little utility to the remaining information on the form and thus there would be no contribution whatsoever to public understanding of the operations and activities of the government.

Def.'s Mot. for Summ. J., Ex. A ("BLM Response Letter") at 1-2.

BLM also noted that SUWA had not provided evidence that it had "any expertise in the field of cultural resources that would allow [it] to use or disseminate [the requested] information in a way that would contribute to the public understanding," *id*. at 2. For these two reasons, BLM notified SUWA that "your request for a fee waiver is denied for this portion of your request." *Id*. BLM did, however, state that it would revisit its fee waiver denial if SUWA chose to "provide this office with additional justification for a fee waiver for the redacted site forms," *id*. Absent a waiver, BLM estimated that it would charge SUWA $18,395 to process its request for the cultural resources documents.[3] Because it denied the fee waiver, BLM would not begin

---

[3] BLM estimated that processing the request for Grand Staircase-Escalante would incur $3,092 in charges, *see* Def.'s Mot. for Summ. J., Ex. B, while the Kanab request would cost

processing the request until the agency received "in writing [SUWA's] willingness to pay the anticipated fees or your additional documentation justifying your fee waiver request." *Id*.

On November 7, 2002, SUWA appealed BLM's denial of the fee waiver. In response to BLM's first assertion, that the records sought would have "little utility" and would make "no contribution whatsoever to public understanding," SUWA claimed that "BLM dramatically overstate[d] the impact of redaction on the utility of the information sought," Def.'s Mot. for Summ. J., Ex. A ("Appeal Letter") at 6. SUWA noted that even with redactions the 'site forms' would likely contain information about impacts to cultural resources in the San Juan Resource Area, allowing the public to evaluate "BLM's management and care of threatened archaeological and cultural sites." *Id*. at 7. Furthermore, SUWA noted, while BLM had stated that "the majority" of responsive documents would be site forms, SUWA expected that other documents besides site forms should be disclosed pursuant to its request.[4]

SUWA also responded to the second rationale BLM advanced for denying the fee waiver, namely that SUWA failed to demonstrate its "expertise in the field of cultural resources." SUWA stated that it recently released a report on cultural resources in Utah wilderness,

---

around $2,164. *See id.* Ex. C.

[4]   In addition to the records pertaining to cultural resources, SUWA asked BLM to provide fifteen specific documents, related to grazing allotments in San Juan County, which it had sought (but apparently not received) through prior FOIA requests. In its October 10, 2002 response, BLM indicated that some of the fifteen documents had already been sent to SUWA, while others either did not exist or were not presently available. Then, in its November 7, 2002 appeal, SUWA noted that with regard to the documents BLM claimed to have provided previously, after a "thorough search" of its records catalog "and of actual records sent by the BLM, SUWA determined that it never received the records at issue." Appeal Letter at 12. It is unclear from the record whether BLM has since provided SUWA with any of the documents in question, but SUWA does not press the issue in this suit.

frequently made public comments to BLM and other federal agencies about impacts to cultural resources on federally-managed lands, and has contracted with archaeologists to "help it assess impacts to cultural resources on BLM lands." *Id*. at 9-10.  In support of its ability to disseminate the information sought to a public audience, SUWA cited "over fifty articles" published in the past years "relating specifically to SUWA"s influence and participation on public lands grazing issues," as well as the organization's history of distributing information through broadcast and print media, outlets which "contact SUWA for comment when any issues regarding public lands in southern Utah arise," *id*. at 11.

By letter dated December 4, 2002, the Department of the Interior's FOIA Appeals Officer, William Wolf, acknowledged receipt of SUWA's appeal of the fee waiver denial.  He stated that an "extraordinarily large number of FOIA appeals" received by his office would prevent a timely decision, and that SUWA has "a right to treat the delay in responding to [its] appeal as a final denial of [its] request," Pls.' Mot. for Summ. J., Ex. 2 to Phelan Decl. at 2.  This suit followed.

## II. ANALYSIS

A.  **Summary Judgment**

Under Fed. R. Civ. P. 56, summary judgment will be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In the absence of disputed material facts, as in this instance, summary judgment is the appropriate mechanism for

resolving FOIA disputes. *See* Fed. R. Civ. P. 56(c); *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 313-14 (D.C. Cir. 1988). Indeed, FOIA cases are "typically adjudicated" through summary judgment motions. *Judicial Watch, Inc. v. Imp.-Exp. Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000).

**B.       Applicable Law – Fee Waiver**

FOIA requires agencies to waive fees normally assessed for search, review, and duplication of documents "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). BLM's fee waiver regulations repeat this statutory language and provide that the agency may waive fees "if disclosure of all or part of the information is in the public interest because its release – (1) Is likely to contribute significantly to public understanding of the operations or activities of the Government; and (2) Is not primarily in the commercial interest of the requester." 43 C.F.R. § 2.19(b). To guide the agency in assessing the first part of this test, BLM regulations direct requesters to provide information as to how the records sought "concern the operations or activities of the Government," 43 C.F.R. Pt. 2, App. D (b)(1); whether there is a "logical connection" between the records sought and the operations or activities of interest, *id*. (b)(2)(I); how disclosure will "contribute to the understanding of the public at large or a reasonably broad audience of persons interested in the subject," *id*. (b)(2)(ii); the requester's identity, qualifications, and expertise regarding the requested information, *id*. (b)(2)(iii), and "ability and intention to disseminate the information," *id*. (b)(2)(iv); and if release of the requested records will "contribute significantly to public understanding," *id*. (b)(3).

The requester bears the burden of showing entitlement to a fee waiver. *Nat'l Treasury Employees Union v. Griffin*, 811 F.2d 644, 647 (D.C. Cir. 1987). The court reviews *de novo* an agency determination to deny a fee waiver request, limiting itself to "the record before the agency." 5 U.S.C. § 552(a)(4)(A)(vii); *see also, e.g.*, *Campbell v. Dep't of Justice*, 164 F.3d 20, 35 (D.C. Cir. 1998). Finally, "Congress amended FOIA to ensure that it be "liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (quoting *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (internal citation omitted)).

Here, because there is no dispute that SUWA's interest in the records is not commercial, the court's sole focus is on whether the information sought is "likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii).

**C.    BLM's Fee Waiver Denial**

In its fee waiver denial letter, BLM advanced two arguments. First, BLM asserted that SUWA has failed to demonstrate its expertise in the area of cultural resources. Second, BLM stated that most of the information on the site forms[5] must be withheld in accordance with the

---

[5]    BLM's October 10, 2002 letter denying SUWA's request for a fee waiver stated that "the majority" of the expected responsive documents are site forms. SUWA argues that the agency's contemplated redaction of the site forms, then, does not provide a proper basis for denying a fee waiver for responsive documents which are *not* site forms. SUWA provides specific examples of other records, aside from site forms, which it expects to be disclosed in response to the cultural resources component of its FOIA request. Phelan Decl. ¶¶ 8, 10-16. After the parties filed cross-motions for summary judgment, BLM "conducted a further review of responsive documents," Def.'s Reply at 1. By letter dated March 23, 2005, Robin Friedman of the Department of the Interior's Office of the Solicitor informed SUWA's counsel that BLM would "grant the fee waiver on the responsive documents pertaining to cultural resources with the exception of the site forms." *Id.*, Ex. A. Consequently, the court limits its consideration to

Archaeological Resources Protection Act ("ARPA") and BLM's implementing regulations. According to BLM, after appropriate redactions are made, the site forms "shed[] *no* light on the manner in which BLM conducts its business and do[] not contribute to public understanding of BLM's operations and activities."  Def.'s Mot. for Summ. J. at 8.

  *1. SUWA's Expertise in Cultural Resources Issues*

  SUWA's September 9, 2002 FOIA request stated generally that SUWA "is recognized to have expertise in matters of public land law and policy," and "has a significant track record of disseminating information regarding other public land issues, including . . . cultural resources," Request Letter at 6-7.  In denying the fee waiver, BLM indicated that SUWA did not provide evidence that it had "any expertise in the field of cultural resources that would allow [it] to use or disseminate this information" in a way that would contribute to public understanding.  BLM Response Letter at 2.  In response, SUWA noted that it had "consistently raised concerns about impacts to cultural resources in comments to the BLM and other federal agencies," citing specific examples.  Appeal Letter at 9.  SUWA also indicated that it had recently issued a report on cultural resources in Utah wilderness titled "Preserving Prehistory – Wilderness: A Sanctuary for Utah's Ancient Treasures," and enclosed a copy of the report with its November 7, 2002 appeal letter.  *Id.*  The report discusses dangers posed to cultural resources on public lands, such as looting, off-road vehicles, and livestock grazing; offers recommendations for improved management of these resources; and directly references BLM publications.  Pls.' Mot. for Summ. J., Ex. 1 to Phelan Decl. at 3, 5, 12-23, 26, 29-31.  The court finds that on the basis of these citations, SUWA presented BLM with sufficient evidence to meet its burden of showing

---

the denial of the fee waiver for the site forms.

expertise in analyzing and disseminating records pertaining to cultural resources. *See W. Watersheds Project v. Brown*, 318 F. Supp. 2d 1036, 1041 (D. Idaho 2004) (noting courts' findings that organizations' "statements of intent to disseminate requested information through newsletters, popular news outlets, and presentations . . . [are] sufficient to entitle [the] organization to a fee waiver."). In any event, BLM's summary judgment motion drops the issue, effectively conceding SUWA's expertise in the area of cultural resources for purposes of obtaining a fee waiver.

*2. BLM's Anticipated Redactions to the Site Forms*

BLM's remaining argument is that after necessary redactions are made to the site forms responsive to SUWA's request, the remaining information will be of "little utility" and would thus make "no contribution whatsoever to public understanding of the operations and activities of the government." BLM Response Letter at 2.

The court's analysis begins with the contested records themselves. The site forms are essentially inventories of historic or cultural sites located on federally-managed lands. As BLM explains, "[w]hen a site is found, a form documenting that site is filled out." Smith Decl. ¶ 8. Since 1982, BLM and other public agencies in Utah have used a format called the Intermountain Antiquities Computer System ("IMACS") to record site information. *Id*. ¶ 7. IMACS site forms have fields for geographic information, such as maps, pictures, and data "to record where the cultural resource is located and to permit it to be found again." *Id*. ¶ 8. The site forms include "a description of the site, its condition, the land owner, the environmental area it is in, the soil type and vegetative cover." *Id*. The site forms also contain information about the cultural resource itself, such as "the nature of the artifacts, tools, or architectural features, the inferences about the

age of the resource, and the culture that created it." *Id*.  Additional information may be entered on certain site forms, for example if petroglyphs are found at the site in question.  BLM attaches a copy of a blank site form to its summary judgment motion.  The form includes "Part A – Administrative Data," with 36 entries, including "location and access," "site description," "site condition," and "impact agent(s)"; and a second section, either "Part B – Prehistoric Sites" or "Part C – Historic Sites," with around fifteen entries each including "culture," "summary of artifacts and debris," and more detailed questions.  *See* Def.'s Mot. for Summ. J., Ex. A.[6]

BLM asserts that "all information relating to the location and nature of the site is protected from release . . . BLM is prohibited by statute from releasing the information regardless of how 'generalized' the information is."  Def.'s Mot. for Summ. J. at 8.  The agency argues that since ARPA forbids the release of many entries on the site forms, the remaining information would be uninformative and does not justify a fee waiver.  BLM then explains that it properly based its fee waiver denial on planned withholdings because "the information is patently exempt as an initial matter" and "there is no indication that BLM will release the patently exempt material in response to plaintiffs' FOIA requests."  Def.'s Reply at 4.

SUWA counters that BLM had not actually decided, in responding to the request, to withhold specific information, that the contemplated withholdings "can be reasonably segregated" from the information not subject to exemption, and that "the disclosed information is of significant utility" to the public.  Pls.' Reply at 2.  SUWA asserts that by denying a fee waiver on the grounds of contemplated redactions, BLM "is inverting the burden of proof and using a

---

[6] Both the sample site forms and the correspondence pertaining to SUWA's September 9, 2002 San Juan Resource Area FOIA request are identified as "Exhibit A" to BLM's summary judgment motion.

fee waiver denial as a guise for preventing SUWA from challenging the agency's contemplated withholdings." *Id*. Finally, SUWA argues that the site forms are not "patently exempt," and that in any event BLM failed to identify the records as such in its fee waiver denial, but instead justified the denial on the grounds that the redacted site forms would not enhance public understanding.

The term "patently exempt" appears nowhere in the statutory text of FOIA and only in two reported opinions. In a case where the Department of the Interior offered a similar rationale for its fee waiver denial, the court found that the agency improperly denied the plaintiff's requested fee waiver on the grounds that a portion of the records sought would be withheld, and "releasing the non-exempt portions would not make a *significant* contribution to the understanding of the general public." *Judicial Watch, Inc. v. Dep't of Energy*, 310 F. Supp. 2d 271, 295 (D.D.C. 2004) (citation omitted), *rev'd in part on other grounds*, __ F.3d __, 2005 WL 1412444 (D.C. Cir. 2005). The court noted that only in "rare cases" would it be appropriate for an agency to deny a fee waiver on the grounds that the documents sought might be exempt from disclosure in their entirety. *Id.*; *see also Carney v. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994) ("An agency may properly deny a fee waiver request on this basis "only if the request was for patently exempt documents.").

Although FOIA creates "a strong presumption in favor of disclosure," *Piper v. Dep't of Justice*, 294 F. Supp. 2d 16, 32 (D.D.C. 2003) (citing *Burka v. Dep't of Health and Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (internal citation omitted)), it also provides certain exceptions and exemptions. Specifically, records whose disclosure is forbidden, limited, or

governed by another statute such as ARPA may be withheld pursuant to Exemption 3.[7] "[E]xemption 3 in particular is to be narrowly construed," because Congress amended this exemption after the Supreme Court ruled that the prior version "authorized nondisclosure whenever a statute granted an agency discretionary power to decide whether disclosure was in the public interest and the agency decided not to disclose." *Natural Resources Defense Council, Inc. v. Defense Nuclear Facilities Safety Bd.*, 969 F.2d 1248, 1253 (D.C. Cir. 1992).

In this case, ARPA provides that "[i]nformation concerning the nature and location of any archaeological resource" covered by the statute "may not be made available to the public . . . unless the Federal land manager concerned determines that such disclosure would (1) further the purposes" of the Act, and "(2) not create a risk of harm to such resources or to the site at which such resources are located." 16 U.S.C. § 470hh(a). BLM's regulations mimic this provision. *See* 43 C.F.R. § 7.18. Both ARPA and the agency regulation thus provide the "federal land manager" with substantial discretion to disclose or withhold "information concerning the nature and location" of cultural resources, based on an assessment of the risks and benefits of disclosure.

In a legal context, "patent" means "obvious" or "apparent," as opposed to "latent." BLACK'S LAW DICTIONARY 1156 (Bryan Garner ed., 8th ed. 2004). Here, it is not obvious that the site forms are exempt from disclosure, only that portions of the forms might be exempt. Neither FOIA nor the caselaw cited by BLM supports the denial of a fee waiver on the basis of

---

[7] Exemption 3 provides that records may be withheld when they are "specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the maters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld," 5 U.S.C. § 552(b)(3).

contemplated partial redactions, as opposed to total withholding.[8] Indeed, under the very statute BLM invokes to justify denial of the fee waiver, whether the site forms are redacted at all requires a discretionary determination. The court, therefore, does not accept BLM's reasoning that the site forms are patently exempt from disclosure.

Because BLM has not shown that the site forms are patently exempt, the court agrees with SUWA that BLM improperly denied the fee waiver. First, SUWA is correct that a defendant agency cannot base a fee waiver determination upon anticipated redactions to the requested records. "In effect, defendant's position is that all an agency needs to do to defeat a fee waiver is proffer that the requested documents fall within various FOIA exemptions. This cannot be so," because such a maneuver "clearly places the cart before the horse requiring the Court to pass upon the validity of withholding documents before the agency decides the documents are to be withheld." *Project on Military Procurement v. Dep't of the Navy*, 710 F. Supp. 362, 367 (D.D.C. 1989). Allowing a fee waiver denial on such a basis would indeed "invert the burden of proof and foist upon plaintiff" the burden of challenging a redaction or withholding; such a burden remains squarely on the agency. *Id.* at 367 (citing *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 868 (D.C. Cir. 1980)). Otherwise, "[a]n agency could require a requester who is otherwise entitled to a fee waiver to make payment even before the agency's claimed

---

[8] SUWA correctly points out that the two cases that have discussed "patently exempt" records refer to entire documents, not to discrete pieces of information contained within otherwise properly disclosed documents. *See Judicial Watch*, 310 F. Supp. 2d at 295; *Carney*, 19 F.3d at 815.

documents, not particular pieces of information contained within documents, may occasionally be "patently exempt."

contemplated partial redactions, as opposed to total withholding.[8] Indeed, under the very statute BLM invokes to justify denial of the fee waiver, whether the site forms are redacted at all requires a discretionary determination. The court, therefore, does not accept BLM's reasoning that the site forms are patently exempt from disclosure.

Because BLM has not shown that the site forms are patently exempt, the court agrees with SUWA that BLM improperly denied the fee waiver. First, SUWA is correct that a defendant agency cannot base a fee waiver determination upon anticipated redactions to the requested records. "In effect, defendant's position is that all an agency needs to do to defeat a fee waiver is proffer that the requested documents fall within various FOIA exemptions. This cannot be so," because such a maneuver "clearly places the cart before the horse requiring the Court to pass upon the validity of withholding documents before the agency decides the documents are to be withheld." *Project on Military Procurement v. Dep't of the Navy*, 710 F. Supp. 362, 367 (D.D.C. 1989). Allowing a fee waiver denial on such a basis would indeed "invert the burden of proof and foist upon plaintiff" the burden of challenging a redaction or withholding; such a burden remains squarely on the agency. *Id.* at 367 (citing *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 868 (D.C. Cir. 1980)). Otherwise, "[a]n agency could require a requester who is otherwise entitled to a fee waiver to make payment even before the agency's claimed

---

[8] SUWA correctly points out that the two cases that have discussed "patently exempt" records refer to entire documents, not to discrete pieces of information contained within otherwise properly disclosed documents. *See Judicial Watch*, 310 F. Supp. 2d at 295; *Carney*, 19 F.3d at 815.

documents, not particular pieces of information contained within documents, may occasionally be "patently exempt."

exemption has been tested in court," a result which could seriously deter requesters "from testing the bounds of the FOIA exemptions." *Carney*, 19 F.3d at 815.

It may well be open to debate whether certain entries on the site forms relate to "nature and location" of the resource, and are thus subject to possible withholding. There can be no dispute, however, that BLM bears the burden of proving the validity of any decision to withhold records. Where it determines that records should be withheld, it must prepare a detailed index to "show specifically and clearly that the requested materials fall into the category of the exemption." *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1390 (D.C. Cir. 1979). The purpose of such an index is "to permit adequate adversary testing of the agency's claimed right to an exemption," *Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992) (citations omitted). BLM did not do so in the administrative record before the court, and therefore its insistence that it will redact certain information from the site forms is unreviewable for purposes of deciding whether SUWA is entitled to a fee waiver.[9]

Finally, while some of the information contained on the site forms clearly pertains to "nature and location" of cultural resources, and thus *may* be subject to redaction, other entries just as clearly do not. Although BLM hides the ball by pointing to data fields such as "assisting

---

[9] BLM makes much hay out of SUWA's acknowledgment in its request letter that "records specifying the location of cultural resources may not be subject to disclosure under FOIA," and its request that BLM "redact any such locational information from the document" rather than opting "to withhold the entire document." Request Letter at 3. BLM claims that this statement is "a binding concession" that SUWA was "seeking a fee waiver for the non-exempt information *only*," Def.'s Reply at 1. While SUWA clearly anticipated that BLM might make some redactions in processing its request, it did not relinquish its statutory right to challenge any particular exemption. Furthermore, the sample redacted site form BLM attaches to its reply brief, while illustrative, cannot be deemed BLM agency action for purposes of resolving the fee waiver issue because it is not part of the administrative record.

crew members" in claiming that "the release of such items would be uninformative," Smith Decl. ¶ 11, one of the areas of information most central to SUWA's request – impacts – does not concern nature or location at all. SUWA thus points out that even the sample redacted site form BLM attaches to its reply brief includes "an assessment of 'impact agents' to cultural resources, such as grazing, roads, recreational vehicles, or mining," Pls.' Mot. for Summ. J. at 11. These entries, standing alone, would provide useful insight into the relative threats to cultural resources on public lands; if site forms show that a majority of resources are endangered by livestock grazing, for example, such information would help the public understand and respond to such a threat. Accordingly, the court cannot accept BLM's conclusory statement that "[a]s a result of these redactions and withholdings . . . the remaining information on the form is of no public significance," 2d Smith Decl. ¶ 11.

### III. CONCLUSION

For the foregoing reasons, the court concludes that plaintiffs' motion for summary judgment must be granted and defendant's motion for summary judgment must be denied. An appropriate order accompanies this memorandum opinion.

> Henry H. Kennedy, Jr.
> United States District Judge

Dated: July 25, 2005